UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMANDA BAKER,

                        Plaintiff,      **No. 1:15-cv-00388-MAT**
                                            **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                        Defendant.
_____

**I. Introduction**

Represented by counsel, Amanda Baker ("Plaintiff") instituted this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

**II. Procedural History**

On July 17, 2012, Plaintiff filed a Title II application for a period of disability and DIB. She also protectively filed a Title XVI application for SSI on July 17, 2012. In both applications, she

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

alleged disability beginning July 7, 2012. These claims were denied initially on October 15, 2012. Plaintiff filed a written request for hearing on October 19, 2012. On December 3, 2013, administrative law judge Eric L. Glazer ("the ALJ") held a hearing in Buffalo, New York, at which Plaintiff appeared with her attorney and testified. Through her attorney, Plaintiff amended her onset date to July 30, 2011. The ALJ issued an unfavorable decision on February 28, 2014. Plaintiff's request for review by the Appeals Council was denied on March 15, 2015, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

Plaintiff and Defendant have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions. For the reasons set forth herein, the Commissioner's decision is affirmed.

**III. The ALJ's Decision**

The ALJ found, at step one, that Plaintiff meets the insured status requirements of the Act through September 30, 2013, and has not engaged in substantial gainful activity ("SGA") since July 30, 2011, the alleged onset date. Although Plaintiff began working full-time as a leather-cutter in October of 2013, this does not rise to the level of SGA. She also worked as a keeper/aide to

seniors from May of 2011, to June of 2012; and for Marshall's department store from July of 2013, to August 2013. However, these positions were performed on a part-time basis and did not rise to the level of SGA.

At step two, the ALJ found that Plaintiff has the following "severe" impairments: mild gastroesophogeal reflux disease ("GERD"), gastritis, gastroparesis, dysthymic disorder, and anxiety disorder.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. In particular, the ALJ determined that the severity of Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02 and 12.04. The ALJ determined that the paragraph "B" criteria are not met because Plaintiff has no limitations in activities of daily living or social functioning, only mild limitations in maintaining concentration, persistence or pace, and has not experienced any periods of decompensation. The ALJ found that the paragraph "C" criteria are not met because Plaintiff has not experienced any periods of decompensation, a required criterion under paragraph "C".

The ALJ proceeded to find that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: she

is able to perform simple, routine, and repetitive tasks, including work that involves only simple multiplication or division, or both.

At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a fast food worker (light exertion, unskilled), because this work does not require the performance of work-related activities precluded by her RFC.

The ALJ did not perform an alternative step five analysis and entered a finding that Plaintiff had not been under a disability as defined in the Act throughout the relevant period.

**IV. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error.  42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or

detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**V. Discussion**

**A. Erroneous Step Four Analysis (Plaintiff's Point I, Point II.a, & Point II.b)**

Plaintiff contends that the ALJ's step four analysis concluding that she could perform her past relevant work ("PRW") as a fast food worker was erroneous because "there was significant evidence that [she] would have difficulty returning" to that position. (See Plaintiff's Brief ("Pl's Br.") at 9 (citing T.43-44)).[2] Plaintiff notes that she "testified that she had difficulty using cash registers," which "inhibited her at Tim Hortons, Burger King, and a pizzeria (all of which could fairly be characterized as fast food jobs)." (Id.). Plaintiff also points out that at her examination with the consultative psychologist, Dr. Baskin, she was unable to perform serial 3's correctly, and Dr. Baskin opined that she had a "moderate" limitation for dealing with stress. (Id. (citing T.465)). According to Plaintiff, remand is required under Abbott v. Colvin, 596 F. App'x 21, 23-24 (2d Cir.

---

[2] Citations in parentheses to "T." refer to pages in the certified transcript of the administrative record.

2015) (summary order). As discussed further below, the Court agrees that the ALJ's step four analysis was insufficiently detailed, but that any error was harmless.

In Abbott, the Second Circuit noted that "[t]he Social Security Administration has cautioned that determination of a claimant's ability to perform past relevant work requires, at the very least, 'a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; [and] (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work.'" Abbott, 596 F. App'x at 23 (quoting Social Security Ruling 82-62, Titles II and XVI: A DISABILITY CLAIMANT'S CAPACITY TO DO PAST RELEVANT WORK, IN GENERAL ("SSR 82-62"), 1982 WL 31386, at *3 (S.S.A. 1982); brackets in original). The claimant in Abbott had PRW as a school teacher. In assessing Abbott's RFC, the ALJ determined that "due to the claimant's depression and attention deficit disorder, she has mild limitations in the ability to understand, carry out, and remember detailed instructions; mild difficulties in the ability to use judgment in making work-related decisions; mild difficulties in the ability to respond appropriately to supervision, coworkers[,] and work situations; and mild difficulties in the ability to deal with changes in a routine work setting." Abbott, 596 F. App'x at 23 (quotation to record omitted; brackets in original). In addition,

the Second Circuit found it significant that Abbott "repeatedly emphasized" the nonexertional demands associated with her PRW as a teacher. However, the Second Circuit noted, in concluding that Abbott could perform her PRW at step four, the ALJ addressed only her physical limitations, leaving unaddressed the nonexertional limitations he had assigned to Abbott in the RFC, as well as Abbott's own statements. Id. The Second Circuit held that because the ALJ's step four analysis left both her descriptions about her PRW and her nonexertional limitations unaddressed, remand was necessary for further consideration and explanation of whether Abbott could perform her PRW of school teacher. Id. at 23-24.

The Court finds that the ALJ's step four analysis consisted mainly of reciting boilerplate, and focused entirely on the fact that Plaintiff's PRW as a fast food worker was performed at the light exertional level and was an unskilled job. (T.18). Plaintiff argues that the ALJ made no effort to explain why she could return to her past work, in spite of her testimony that she was unable to deal with cash registers at her previous fast food jobs, and in spite of Dr. Baskin's assessment of moderate limitations dealing with stress. However, in making this argument, Plaintiff neglects to mention her later testimony that her difficulty using cash registers did not exist any longer:

> Q    And you are saying that in those years [working at Carroll's and Burger King], you still had trouble operating the equipment, the machine or –
> A    Not having any trouble now, but I had trouble back

```
              then.
       Q      Okay. And you are having less trouble now with
              that?
       A      No.
       Q      You are having as much trouble or – I thought you
              just said your trouble has gone away. You don't
              have it anymore, operating cash registers?
       A      Nope. The only thing that – sometimes I feel
              depressed sometimes I don't.
       Q      That effects [sic] you. So it's depression, not the
              skill with the machine.
       A      Yes.
```

(T.44-45). Moreover, despite her difficulty operating cash registers at Burger King, Plaintiff was able to maintain employment there for three years. (T.44).

As to the "moderate" limitations in dealing with stress assigned by consultative psychologist Dr. Baskin Plaintiff omits mention of the remainder of Dr. Baskin's opinion that Plaintiff "would have minimal to no limitations being able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks with supervision, make appropriate decisions and relate adequately with others." (T.465). In addition, Dr. Baskin suggested that Plaintiff "consider some type of vocational training/rehabilitation given her relative youth." (T.466). On the whole, then, Dr. Baskin's medical source statement is not inconsistent with the RFC to perform simple, routine, and repetitive tasks.

Moreover, Plaintiff did not testify that dealing with stress inhibited her from obtaining employment. Rather, she stated that

she "sometimes" felt depressed. (T.45). The medical record, however, is devoid of any mental health treatment during the relevant period for depressive symptoms. At the hearing level, Plaintiff submitted a study "documenting that 36.9 percent of people with 'moderate mental illness' seek treatment; and only 59.6 percent of people with 'serious mental illness' seek treatment in any given calender year." (Pl's Br. (citing T.254 (citing 284-90)). Plaintiff notes that the record further indicates that she lacked access to health insurance. (T.58, 409). Plaintiff urges that the Court to draw the inference that her mental health issues were of disabling severity, and that the only reason she did not seek treatment was due financial hardship. However, there is no evidence that Plaintiff herself did not seek mental health treatment because she could not afford it. Rather, the record indicates that at her yearly physical and other doctors' appointments, Plaintiff denied symptoms of anxiety and depression. (See, e.g., T.410 (11/4/11; "patient's mood and affect are described as stable"), T.432 (7/9/12; "Not Present - Anxiety, Change in Sleep Pattern, Depression and Mood changes") (emphasis supplied), T.524 (7/1/13; "Not Present - Anxiety, Depression, and Frequent crying") (emphasis supplied), T.530 (11/4/13; "Not Present - Anxiety, Change in Sleep Pattern, Depression and Mood changes") (emphasis supplied)). It is well settled that an ALJ "is entitled to rely not only on what the record says but also on what it does not say." Dumas v. Schweiker,

712 F.2d 1545, 1553 (2d Cir. 1983) (citations omitted).

Plaintiff relatedly contends that the ALJ erred in failing to grant her request to have Dr. Baskin subpoenaed so that Plaintiff's attorney could "clarify the extent of th[e] moderate impairment [in dealing with stress]" assigned by Dr. Baskin to Plaintiff. (See Pl's Br. at 14-16). The ALJ considered Plaintiff's request, but denied it on the basis that notwithstanding the "difficulties or vagueries [sic]" on the face of the medical source's report that "certainly may impair its utility as an evidentiary document," the "weight of the evidence is for [him] to determine" and he did not "want to burden the administration, which, of course, is on the other side of this case, from having to produce these experts." (T.35). While the ALJ's reasoning is less than clear, the ultimate decision not to subpoena Dr. Baskin was not error under the relevant standard.

The Second Circuit has held that "the right to due process in a social security disability hearing does not require that a reporting physician be subpoenaed any time a claimant makes such a request." Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). The issuance of subpoenas in proceedings under the Act is covered in 20 C.F.R. § 404.950(d)(1), which provides, in relevant part, as follows:

> When it is <u>reasonably necessary</u> for the <u>full presentation</u> of a case, an administrative law judge . . . may, . . . at the request of a party, issue subpoenas for the appearance and testimony of witnesses . . . .

-10-

20 C.F.R. § 404.950(d)(1) (emphasis supplied). The Second Circuit has emphasized that "[t]he plain language" of the section quoted above "clearly places the decision to issue a subpoena within the sound discretion of the ALJ." Yancey, 145 F.3d at 111 (citing Wallace v. Bowen, 869 F.2d 187, 194 (3d Cir. 1988) ("The question of whether to issue a subpoena to compel cross-examination of a reporting physician is a question entrusted to the ALJ who is obligated to develop the record fully.") (quotation omitted in original)). Furthermore, courts have held that it is appropriate to consider "the burdensome effects of the costs of paying reporting physicians to testify in every case, as well as the likely decline in physicians willing to provide reports with the knowledge that a subpoena would follow virtually every report submitted." Id. at 113 (citing Flatford v. Chater, 93 F.3d 1296, 1306 (6th Cir. 1996)).

Plaintiff has failed to establish that Dr. Baskin's testimony was "reasonably necessary" for the "full presentation" of her case given that the ALJ here obtained a complete medical record for Plaintiff and the absence of any indication that Dr. Baskin's report was incomplete, inaccurate, or tainted by prejudice. See Yancey, 145 F.3d at 113 (finding no abuse of discretion where "[t]he ALJ (1) allowed Yancey a fair and meaningful opportunity to present her case and (2) had no indication that Dr. Wong's (or any physician's) reports were inaccurate or biased or that subpoenaing Dr. Wong would have added anything of value to the proceedings").

Even assuming arguendo that Dr. Baskin's assignment of "moderate limitations" in dealing with stress constituted what the ALJ referred to as "difficulties or vagueries [sic]," Plaintiff's own testimony, as discussed above, did not support a finding that problems with stress precluded her from performing her past relevant work. Further, as discussed above, the remainder of Dr. Baskin's medical source statement is not inconsistent with ALJ's RFC assessment that Plaintiff can perform simple, routine, and repetitive tasks.

**B. Failure to Order a Consultative Intelligence Examination (Plaintiff's Point II.c)**

Plaintiff argues that ALJ erred in declining to order a consultative intelligence examination, on the grounds that consultative psychologist Dr. Baskin estimated Plaintiff's intelligence to be in the low average to borderline range and that Plaintiff reported that she had a learning disability in school. (See Pl's Br. at 12-13, 16-17).

Standing against Dr. Baskin's passing mention of Plaintiff's possible borderline range intellectual functioning, is substantial other evidence indicating that Plaintiff's intelligence did not preclude her from substantial gainful employment. In particular, Plaintiff graduated high school; although she needed "resource room" during school, she denied requiring special accommodations such as extra time to complete math or English assignments. (T.37). Despite her difficulties related to math and operating a cash

register, Plaintiff successfully maintained employment at Burger King for about three years. At the time of the hearing, she was working 35 hours per week at Garrett Leather, operating a cutting machine and labeling and clear-coating samples; she was able to do the work satisfactorily. (T.40-41, 43). Dr. Baskin found that although she had difficulty with serial 3's, she could perform counting and simple calculations, could recall 3 out of 3 objects immediately and after 5 minutes, and could recite 7 digits forward and 3 digits backwards. (T.465). Plaintiff's speech was fluent and clear, she was responsive to questions, and her expressive and receptive language were intact. (T.464). Plaintiff performed all activities of daily living independently, including care of her two young children. Although she did not have a driver's license, there is no suggestion that this was due to any cognitive limitations. Based on the record as a whole, it was not an abuse of discretion for the ALJ to decline to order a consultative intelligence examination. See, e.g., Jones v. Colvin, No. 6:16-CV-0044(GTS), 2017 WL 3016839, at *6 (N.D.N.Y. July 14, 2017) (no abuse of discretion in deciding not to order intelligence examination where examining physician noted "[rule out] Borderline Intellectual Functioning"; ALJ was aware that claimant only completed 9th grate, did not obtain GED, and received special education services); Wallace v. Colvin, 120 F. Supp.3d 300, 305 (W.D.N.Y. 2015) ("While the record appears to establish [the claimant]'s 'possible' or

apparent borderline intellectual functioning, there is no evidence that [her] I.Q. has ever been objectively assessed. The Court is mindful that in general, passing references in the record to a claimant's low intelligence do not trigger an ALJ's obligation to order intelligence testing, particularly where other evidence of record, such as the claimant's education, work history, and activities of daily living, does not suggest a severe cognitive impairment.") (citing Crawford v. Astrue, No. 13-CV-6068P, 2014 WL 4829544, at *24 (W.D.N.Y. Sept. 29, 2014) ("The record reflects that Crawford successfully completed high school, in a special education setting, and was able to study for and obtain her CNA certification. Further, Crawford maintained employment in several semi-skilled positions, including as a CNA, for several years. Crawford reported that she is able to manage her own finances and enjoys reading as one of her hobbies. Although Crawford testified at the hearing that she does not believe that she is able to read at an appropriate level, she conceded that she is able to read a newspaper. Thus, the record does not suggest that Crawford suffers from significant cognitive impairments, and the few references in the record were insufficient to trigger the ALJ's duty to order an intelligence examination.") (citations omitted)).

## VI. Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision was not legally erroneous and is supported

by substantial evidence. It therefore is affirmed. Accordingly, Defendant's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   November 21, 2017
         Rochester, New York.